**Willard I. BOSS, Appellant,**

v.

**PRINCE'S DRIVE–INS, Appellee.**

No. 4438.

Court of Civil Appeals of Texas.

Waco.

March 10, 1966.

Rehearing Denied March 31, 1966.

Thompson, Hippard, Gibson, Korioth & Tita, Houston, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, Blake, Tartt and Jerry Wickliffe, Houston, for appellee.

WILSON, Justice.

Judgment for defendant, operator of a drive-in eating establishment, was rendered notwithstanding jury findings that its negligence in failing to call the police proximately caused plaintiff customer's injuries received in an assault by a third person.

Plaintiff drove his car upon defendant's premises to order food. He was accompanied by his wife. He saw "a crowd of young fellows stand around, moving, milling around," and saw a youth, Yosemite, whose clothes were wet, muddy and disheveled, and who appeared to have been involved in a fight. Plaintiff concluded that what he saw "could signify trouble of some sort, and immediately I decided to avoid the area and get as far away as I could", he testified. He then moved his car toward the opposite end of the parking lot and ordered food. He parked next to another car occupied by a man. Plaintiff observed no further fighting, but "saw Yosemite back away from the group and run across the parking area." After an interval (during which Yosemite testified he entered defendant's cooking area and requested some employees to call the police) Yosemite came to the front of plaintiff's car where he testified he was waiting for the police to arrive. A waitress asked Yosemite, "Can I help you, or is there anything we can do?"

Two or three minutes later two young men (who the evidence shows had been fighting Yosemite), whom plaintiff had earlier seen talking to Yosemite, came to the front of the car and demanded that Yosemite pay them money due on a $13 gambling debt. Plaintiff testified he had then been on the parking area about 15 minutes. Yosemite offered to give them an "I. O. U.", but the two men insisted on a cash payment. Plaintiff testified, "As things progressed they seemed to be working up to some sort of violence." Using profanity and threats, the two began to push Yosemite. "I stepped out of the car, and it seemed to me maybe that some calm words by an older man would try to calm the situation down or there would be a fight,

and I stepped out and said something like, 'Look fellows, why don't you forget about it; it is just about a little money and not worth causing any trouble about.'"

One of the men, Ainsworth, then wheeled on plaintiff and said, "What in the hell are you butting into this for?" Plaintiff cautioned that someone would call the police, and commented that "it would be stupid to start a fight about such a trivial sum of money." "Are you calling me stupid?" asked Ainsworth, who said to Yosemite as he struck him, "I am going to give you something to remember me by." Plaintiff thereupon asked Yosemite, "Why don't you file assault charges, and I'll testify for you." Plaintiff immediately received a blow from Ainsworth, whose wristwatch fell to the ground. Yosemite fled. Plaintiff attempted to retrieve the watch, when he was struck again. Upon announcement by the waitress that the police were on the way, Ainsworth drove off with his friend. The police arrived two or three minutes later, plaintiff testified. The evidence shows they were called at 11:00 P.M. Plaintiff testified he had arrived approximately between 10:30 and 10:45.

Plaintiff testified that when he stepped from his car he knew he was "getting out between two cars where some boys were getting ready to start a fight", and he "knew there was a risk that he would get hit"; that no one had said anything to him until he stepped out and initiated a conversation; that he knew if he interjected himself "into other peoples' quarrels you run the danger and risk of being involved in it yourself", and appreciated and knew the danger. He had no fear for the safety of himself or his wife. It was stipulated that "the danger that he might be struck by one of the participants at the time the argument took place on the outside of his car was known to and appreciated by plaintiff, and he voluntarily exposed himself to such danger."

The jury found defendant's manager failed to call the police prior to the time plaintiff was struck, which was negligence

and a proximate cause. It also found that plaintiff acted as a reasonably prudent man in voluntarily intervening in the argument.

There is evidence from which it may be deduced that defendant's manager knew the two men were fighting before plaintiff drove in, and that he did not then call the police. He testified the fighting stopped. There is evidence that the manager was preparing to call a wrecker to have a car which was left on the parking area removed when the waitress notified him of the fight at plaintiff's car, and that he then called the police as soon as the telephone was available. Plaintiff estimated he was hit "at least ten minutes before 11" P.M., when the police received the manager's call.

Plaintiff's contentions are that judgment non obstante veredicto was improper because his voluntarily encountering a danger known and appreciated does not preclude his recovery since he was motivated by humanitarian impulses in attempting to assist Yosemite, and the jury found he acted as a reasonably prudent person. He says the "no duty" and *volenti* doctrines discussed in Halepeska v. Callihan Interests, Inc., Tex. Sup., 371 S.W.2d 368, are made inapplicable because he was engaged in rescue effort, which he urges as an exception to the Halepeska non-liability rules.

■ As the rescue doctrine may relate to and affect defendant's liability, however, it is essential that the hazardous situation of the person toward whom plaintiff's rescue efforts are directed result from breach of a duty defendant owes to the one sought to be rescued by plaintiff. American Law Inst., Restatement, Torts, Sec. 893.

■ In this case Yosemite, the person plaintiff now says he was attempting to rescue, was not an invitee on defendant's premises. He was not a customer. He and a friend were going to another town to see some girls. The boys met at the drive-in parking lot where the friend left his car during the trip taken in Yosemite's car. They returned about 10:15 or 10:20 to get the car. As his friend started to get out of Yosemite's car, the latter found Ainsworth waiting for him and the fight ensued.

Yosemite occupied no better status toward defendant than that of a licensee to whom defendant owed no duty to prevent assaults by third persons for reasons personal to them. See Denison Light & Power Co. v. Patton, 105 Tex. 621, 154 S.W. 540, 45 L.R.A.,N.S., 303; Gulf Refining Co. v. Beane, 133 Tex. 157, 127 S.W.2d 169; Texas Cities Gas Co. v. Dickens, 140 Tex. 433, 168 S.W.2d 208; Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d 1073; Hernandez v. Heldenfels, Tex.Sup., 374 S.W.2d 196. Plaintiff's attempted rescue of Yosemite, therefore, did not constitute a justification which affected absence of defendant's duty to plaintiff.

■ In our opinion, recovery is barred because defendant owed plaintiff no duty, the danger being fully known and appreciated. Plaintiff's recovery is barred also because he deliberately and voluntarily exposed himself to the danger so known and appreciated, as a result of an intelligent choice; and there was no justification in law which would excuse his conduct barring recovery under the doctrine of volenti non fit injuria. Halepeska v. Callihan Interests, Inc. (Tex.Sup.1963) 371 S.W.2d 368, 378–380.

■ The judgment of the trial court was required for another reason: Defendant's failure to call the police was not a proximate cause of plaintiff's injuries; the element of causation is absent.

Although others were seated in cars in proximity to plaintiff, none got out or became involved, and no one else got hit. The participants had not spoken to plaintiff, and there is nothing to indicate they were aware of his presence. Plaintiff knew police officers were not present; he had warned that someone "would call" them if a fight ensued. As plaintiff concedes, his intervention in the quarrel precipitated his involvement in the affray. He anticipated

the result. It was directly caused by his assumption of the role of intercessor and mediator which he knew was likely to provoke the combatants to injure him, and which he admits by his testimony would not have occurred but for his intercession. Without this moving and efficient cause the injury would not have occurred.

The judgment is affirmed.